Michael J. Elmore #7-5665
Assistant United States Attorney
District of Wyoming
P.O. Box 449
Lander, WY  82520
(307) 332-8195
michael.elmore@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| | **Criminal No. 22-CR-60-F** |
| **v.** | |
| **RONALD OSTROM,** | |
| Defendant. | |

---

### GOVERNMENT'S MOTION FOR JURY VIEW OF LIVESTOCK

The United States requests the Court grant an in-person viewing and eyewitness identification of the horses at issue in this matter by the jury. The United States believes an in-person viewing is necessary and important for a complete understanding of the facts at issue and will be helpful to the trier of fact for reasons articulated below.

### *LAW*

"[T]he decision to conduct a site visit is a matter that is subject to the discretion of the trial court." *United States v. Gray,* 199 F.3d 547, 550 (1st Cir. 1999); 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5176.2, at 883-84 (2d ed. 2012); *see also United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir.1987); *United States v. Gallagher*, 620 F.2d 797 (10th Cir. 1980); *Casias v. United States*, 302 F.2d 513 (10th Cir. 1962).  "[A]ny kind of presentation to the jury or the judge to help the fact finder determine what the truth is and assimilate

and understand the evidence is itself evidence" *Glassroth v. Moore*, 335 F.3d 1282, 1289 (11th Cir. 2003) (granting and conducting site visit in the exercise of its discretion and was free to make use of its observations in its decision of the case); *See also Gray,* 199 F.3d at 550 (noting a site visit or view is "within the category of admissible evidence"); 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 403.07[4]. Furthermore, the judge "may consider such factors as the orderliness of the trial, whether the jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination had been permitted regarding the details of the scene." *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997)), *aff'd*, 98 F. App'x 102 (3d Cir. 2004). In assessing the above factors as they apply to the current case, the Court should find that a jury view is appropriate and helpful to the trier of fact.

The Defendant was issued United States Forest Service (USFS) horses and mules for his use in the course of his duties as a federal law enforcement officer. One of the horses, a gray mare[1] known as Roany, was purchased by the Forest Service in 2014 and used by the Defendant. Roany is currently around 10-12 years old and is approximately 15.2 hands tall.[2] The other horse at issue is a bay gelding[3] known as Reo who was purchased by the Forest Service in 2013 and also issued to the Defendant for his use. At the time the government purchased him, Reo was approximately 3-4 years old. Of significance, Reo has a brand on his left shoulder—a reverse D quarter circle, which was placed there by his original owner:

---

[1] A mare is a female horse.
[2] A "hand" is an ancient unit of length, now standardized at 4 inches (10.16 cm) and used today primarily for measuring the height of horses from the ground to the withers (top of the shoulders). The unit was originally defined as the breadth of the palm including the thumb.
[3] A gelding is a castrated male horse.



The Defendant retired from his position with the USFS at the end of August 2021. When he retired, he was required to return all the government's property, including Roany and Reo. The Defendant failed to do this. Instead, the Defendant attempted to deceive the USFS and provided two similarly colored but less valuable horses in Roany and Reo'splace. The government will argue the Defendant did this because Roany and Reo have inherently desirable qualities and specialized training. Not only is the mare Roany a reliable back country horse, but government's evidence will show that the Defendant also planned to grow his personal horse breeding business after his retirement. Roany has desirable blood lines and good conformation.[4] Obtaining a horse with the same bloodline and conformation would be impossible since the stallion who foaled Roany is now deceased and the horse ranch which raised and sold Roany to the government is no longer in business. In fact, the Defendant had already taken steps to breed Roany prior to his retirement.[5] The gelding, Reo, is also a valuable horse in that he is a sound (healthy), well broke, reliable, experienced mountain horse who is now around 13 or 14 years old.

---

[4] Conformation refers to the shape or structure of a horse, and it can impact a horse's athletic ability. Correct legs structure can improve desired performance and reduce lameness.

[5] Roany was pregnant when the government recovered her from the Defendant's property in March of 2022 (only seven months after the Defendant retired). Horses are usually pregnant for 11 months. Roany foaled on June 4, 2022, which means Roany was bred at the beginning of June 2022, three months *before* the Defendant retired.

The horses the Defendant attempted to pass off as Roany and Reo were of lesser quality and were not trained to perform the tasks required of USFS horses. The mare turned in by the Defendant in place of Roany – a gray mare later identified as Lulu—was almost wild and barely halter broken rendering her unfit for use as a USFS horse. Lulu is markedly smaller than Roany, measuring only 14.2 hands tall and has a completely different body style. The gelding turned in by the Defendant—later identified as Dollar—is a dark buckskin color instead of a bay color like Reo and, according to a veterinarian is at least 18 years old. Lulu and Dollar were never owned by the USFS. Instead, the government's evidence will clearly show that the Defendant obtained Lulu and Dollar within two years of his retirement for the specific purpose of replacing Roany and Reo, after the eyewitness identification of them by their prior owners.[6]

The jury will be called upon to decide whether Roany and Reo—the horses seized during the execution of two search warrants on the Defendant's property--belong to the USFS and whether the Defendant, in an attempt to fool the USFS replaced Roany and Reo with Lulu and Dollar. Although the jury can compare historical photographs of the horses, a true appreciation of the color, age, conformation and size differences between the horses, especially the two gray mares, cannot be done through photographs and witness testimony alone. For example, in the photos below, Roany is on the left and Lulu is on the right:

---

[6] Dollar is currently personally owned by the Defendant and Lulu is currently owned by the Defendant's (now ex) girlfriend.

 

 

As the Court can see, it is difficult to judge the difference in conformation, age, and size between these two horses from photographs alone. Additionally, there will be extensive testimony regarding the reverse D quarter circle brand on Reo. The government expects the Defendant may present a mistake of fact defense due to the similarities of the horses. It will be extremely helpful to the trier of fact to view both Dollar and Reo and see the physical differences between these two horses for themselves, to include the conformation of each horse and the brand on Reo compared to the lack of a left shoulder brand on Dollar. Just as with mares Roany and Lulu, it will be helpful for the jury to make an in-person comparison of the two geldings based upon the jury's own visual perception of the geldings' detailed physical characteristics (Reo is on the left, Dollar on the right):



Overall, the Court should also consider the unique appearance and relative age of each horse will be a significant issue before the jury. The horses are evidence and an in-person viewing by the jury is the only way the jury can appraise the evidence fairly. Viewing the horses at issue in this matter should not be any different than viewing a gun, drugs or other piece of physical evidence which is small enough to come inside the courtroom. Simply because the horses are living, large animals (who may create a mess on the floor) and cannot come into the courtroom does not mean an in-person viewing would not provide incredibly relevant and helpful evidence. "[T]he size of the courtroom should not necessarily limit the evidence to be presented to the jury," the court said in allowing the jury to go outside to see a firetruck that was involved in a collision, as well as its flashing lights. *Williams v. Bethany Volunteer Fire Dept.,* 307 N.C. 430, 298 S.E.2d 352, 356 (1983). *See State v. Tucker*, 347 N.C. 235, 490 S.E.2d 559 (1997) (court properly allowed jury to view police vehicle that defendant shot at); *see also State v. Nobles*, 106 Ohio App. 3d 246, 665 N.E.2d 1137 (2d Dist. Montgomery County 1995) (viewing not limited to scene where crime occurred, proper to order jury view of incinerator where victim's body allegedly disposed of); *Arnold v. Laird,* 94 Wash. 2d 867, 621 P.2d 138 (1980) (court approved jury's viewing of defendant's dog "Blanket" on the courthouse lawn, deeming it an "observation"). Some of the

statutory provisions include objects along with realty as proper subjects for a view. *See, e.g.,* Cal Penal Code § 1119 ("any personal property which has been referred to in the evidence and cannot conveniently be brought into the courtroom"). The government will call two eyewitnesses – the prior owners of each horse – who can describe the physical characteristics of each horse. However, this would not be a good substitute for the jury's personal perception of each horse's detailed physical characteristics. "A picture is worth a thousand words" but personal perception is even more valuable. The government would also propose to have Wyoming Livestock Brand Inspector Frank Barrett, previously noticed as an expert in this matter there as well to point out the brand discrepancies for Reo's brand. The brand inspector and the two eyewitnesses will be called back-to-back, the viewing could be completed after their courtroom testimony is finished, or at the end of the court day to minimize disruption.

In most cases, photographs and/or videotapes are adequate replacements for a jury viewing the crime scene. Viewing detailed physical characteristics of animals and comparing those characteristics and animals to one another cannot readily be done through photographs as is demonstrated above. If the Defendant argues the imposter horses are in fact the government's horses and the government is simply confused as to "which horse is which" it will be extremely important for the jury to see the horses, in person, to aid the jury in its determination as to whether this defense is reasonable.

Lastly, while we all live in Wyoming—the Wild West—where there are many horses, the average juror may not have any familiarity whatsoever with horses and their physical characteristics. The viewing will help negate juror confusion regarding descriptions of the horses which may have used terms and descriptors that have no meaning to the jurors and allow them to make their own judgment, rather than make their decisions based only on photographs which do

not lend themselves fully to comparisons of detailed physical characteristics. Allowing an in-person viewing is simply the "best evidence" for the trier of fact.

A view of the horses can be conducted in an enclosed pen so the jury can compare and contrast the horses side by side without being in any danger from the horses. The horses will be kept at the Laramie County Fairgrounds, approximately 15 minutes from the courthouse, during trial. An indoor fenced arena will keep both jurors and animals safe and will permit the viewing even in inclement weather. The government can provide the Court with a low to no cost option for the safe and secure transportation of the Court, the jury,[7] court staff and court security to the fairgrounds. The Defendant is currently free on bond so he would not need to be escorted by the U.S. Marshals and should not pose a safety or escape risk. The entire viewing, including travel, will take less 90 minutes. The government will arrange to make a video recording of the viewing to capture the process in case of appeal should the Court order that be done.

## IV.    CONCLUSION

The jury is being asked to decide issues based on the detailed physical characteristics of four horses. An in-person viewing of the evidence, the horses, will give the jury the best evidence upon which to base their decisions. The horses cannot be questioned by the parties, but they can still tell a story if they are viewed in person. The factors weigh heavily in favor of a jury view and the Court should grant the government's motion.

DATED this 22nd day of November 2023.

NICHOLAS VASSALLO
United States Attorney

By:    */s/Michael J. Elmore*
MICHAEL J. ELMORE
Assistant United States Attorney

---

[7] The government does not propose to transport the jury itself but instead would provide an option for the court which has already been researched by the government and should be satisfactory to the Court and Defense Counsel.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 22nd day of November 2023, the foregoing was electronically filed and consequently served on defense counsel.

_____*/s/Mikala Dawson*_____
For the United States Attorney's Office